UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORRAINE M.,[1]

                             Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

DECISION AND ORDER

1:19-CV-1515 (CJS)

---

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Apr. 3, 2020, ECF No. 8; Def.'s Mot., June 30, 2020, ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 8] is denied, the Commissioner's motion [ECF No. 11] is granted, and the Clerk of Court is directed to close this case.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court. Plaintiff filed her DIB and SSI applications in August 2016, alleging an onset date of February 27, 2014. Transcript ("Tr."), Aug. 9, 2019, ECF No. 184–187. In her "Disability Report," Plaintiff reported that her ability to work was limited by a lumbar spine injury. Tr. 238. On September 29, 2016, the Commissioner determined that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 115. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 125.

Plaintiff's request was approved, and the hearing was held via videoconference on September 26, 2018. Tr. 27. Prior to the hearing, Plaintiff's counsel filed a brief with the ALJ summarizing Plaintiff's claim. Tr. 267–269. The brief stated, in pertinent part:

> On February 27, 2014, [Plaintiff] sustained severe and permanent injury to her lumbar spine when the school bus on which she was working was involved in an accident. The claimant was involved in a second motor vehicle accident on August 7, 2015, in which she sustained further injury to her back, as well as a cervical spine injury. Following these incidents, the claimant developed chronic back and neck pain accompanied by upper and lower extremity radiculopathy/paresthesia. In addition, the claimant has a learning disability and was enrolled in special education classes throughout elementary school and high school. On this application, the claimant alleges the following severe impairments:
>
> Lumbar Spine Injury with Lower Extremity Radiculopathy
>
> Status-Post Lumbar Facetectomy, Foraminotomy, and Laminectomy (Dr. Ross Sherban, 9/6/17)

    Cervical Spine Injury with Upper Extremity Radiculopathy

    Status-Post ACDF and Corpectomy C4-6 (Dr. Ross Sherban, 2/21/18)

    Thoracic Spine Injury

    Recurring Acute Abdominal Pain

    Learning Disability

    High Blood Pressure

    Obesity . . . .

Tr. 267. The brief further stated that Plaintiff "respectfully submits that [her] spinal injuries, radiculopathy, abdominal pain, learning disability, and other conditions meet or equal SSA Listing 1.04 ('Disorders of the spine')." Tr. 268. The brief also claimed that, in the alternative, Plaintiff's "combined exertional and non-exertional impairments are such that she cannot perform any work at the level of substantial gainful activity." Tr. 268.

    At the hearing, the ALJ examined Plaintiff's work history and questioned whether she had engaged in substantial gainful activity[2] between her alleged onset date and the hearing. That examination spanned several pages of the hearing transcript, and included the following exchanges:

    [ALJ:] . . . [W]hen did you last work, ma'am?

    [Plaintiff:] 2014.

---

[2] An individual who is earning more than a certain monthly amount (set annually by the Commissioner) is ordinarily considered to be engaging in substantial gainful activity. Pursuant to the Commissioner's regulations, if a claimant is able to engage in substantial gainful activity, the Commissioner will find that he or she not disabled. 20 C.F.R. § 404.1571–404.1576.

[ALJ:] . . . . Now we show earnings in your file of work after that . . . . We show in 2017 you earned $13,852. . . . What were you doing in 2017 . . . ma'am?

\* \* \* \*

[Plaintiff:] Oh, yeah, I was -- oh, yeah, that is right, for the hair stuff, sorry . . . . working at my sister's shop.

\* \* \* \*

[ALJ:] Okay. Well, did you work every month? Did you work every week?

[Plaintiff:] Yes, every month.

[ALJ:] Okay. And how many hours a week were you working?

[Plaintiff:] Like two or three hours.

[ALJ:] Two or three hours a week?

[Plaintiff:] Yes.

[ALJ:] And you made $13,852 in 52 weeks?

[Plaintiff:] Yes.

\* \* \* \*

[ALJ:] Okay. Did your sister keep track of your hours?

[Plaintiff:] Yes.

[ALJ:] So likely your sister would know how many hours you worked since February of 2014?

[Plaintiff:] Yes.

\* \* \* \*

[ALJ:] In 2016 you also earned $13,852. Did you do the same work in

4

2016?

[Plaintiff:] Yes.

[ALJ:] And you made the same amount of money?

[Plaintiff:] Yes.

[ALJ:] And then in 2015 we show no earnings and you didn't work at all in 2015?

[Plaintiff:] No.

[ALJ:] And why not?

[Plaintiff:] Because that's when I was injured and I was like still, you know, messed up from the accidents.

[ALJ:] Okay. And then in 2014 it looks like . . . . you earned $10,331 from self-employment. Was that also working for your sister, doing hairdos?

[Plaintiff:] Yes.

[ALJ:] Do you know how many months you worked in 2014 doing that?

[Plaintiff:] No, I don't remember.

[ALJ:] All right, and then we show also in 2014 some earnings from the City of Buffalo. Tell me what you did for the City of Buffalo. It looks like you worked for the City several years?

[Plaintiff:] Yes, a bus aide.

\* \* \* \*

[ALJ:] All right . . . but when you went and talked to some doctors in 2016, it doesn't appear that you reported to them that you were working . . . Why didn't you tell them you were working?

\* \* \* \*

[ALJ:] Okay. All right. Well, here's my problem, Counsel, the earnings

5

in 2014 appear to be over SGA . . . . The 2016 earnings are also over the SGA level, so we have the same issue. And in 2017, because the SGA bumped up a little for each of these years, it's just under the SGA, but we don't know when she worked and how many months of the year she worked.

So I'm going to ask you to provide me the detailed information that will help me make that determination. I think you have the burden of showing that this work was not SGA level or equivalent . . . .

Tr. 33–56. At the close of the hearing, the ALJ again requested that Plaintiff provide additional documentation about her earnings and work history between 2014 and 2018, and also asked Plaintiff's counsel to brief the earnings issue. Tr. 77–78. No additional documentation or briefing was ever provided to the ALJ. Tr. 14–15.

In his decision on November 1, 2018, the ALJ found that Plaintiff was not disabled, and denied both DIB and SSI benefits. Tr. 21. On September 12, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

LEGAL STANDARDS

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). It is not the reviewing court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). *See also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court

must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

Plaintiff raises a single issue for the Court's review with respect to the ALJ's

decision to deny her DIB and SSI benefits: she argues that the ALJ's determination of her residual functional capacity is not supported by substantial evidence. Pl. Mem. of Law, 1, Apr. 3, 2020, ECF No. 8-1. The Commissioner disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

The Five-Step Evaluation Process

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

The ALJ's Decision

In this case, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2019. Tr. 14. At step one of the five-step evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity from the alleged onset date of February 27, 2014 through December 2014, and then from January 2016 to September 2017. Tr. 14. Hence, the ALJ's findings at the remaining steps in the process addressed only 2015, and the period between September 2017 and the ALJ's decision in November 2018. Tr. 15.

At step two, the ALJ determined that Plaintiff has two severe physical impairments: cervical and lumbar degenerative disc disease. Tr. 15. The ALJ also noted that although Plaintiff suggested at the hearing that she was suffering from depression, the alleged depression was not a "medically determinable impairment" because the record does not include a diagnosis from an acceptable medical source. Tr. 16. At step three of the process, the ALJ determined that Plaintiff's impairments, considered either individually or in combination, do not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 16.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that Plaintiff:

> [C]an frequently operate pedal controls; she can occasionally balance, stoop, kneel, crouch, or climb ramps or stairs, but is precluded from crawling or climbing ladders, ropes, or scaffolds; she can occasionally reach overhead bilaterally; she must avoid concentrated exposure to hazardous conditions, such as unprotected heights or dangerous machinery; she can occasionally drive.

Tr. 16.

Based on this RFC, and on the testimony of an impartial vocational expert, at step four the ALJ found that Plaintiff was able to perform her past relevant work as a bus monitor. Tr. 20. Additionally, the ALJ determined at step five that – considering Plaintiff's age, education, work experience, and RFC – she could make a successful adjustment to work at other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1569, § 416.969. Relying on the vocational expert's testimony, the ALJ found that a person of Plaintiff's age, education, work experience and RFC can perform such jobs in the national economy as a toll collector, parking lot cashier, office helper, or ticket seller. Tr. 21. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 21.

The ALJ's RFC determination is supported by substantial evidence.

As noted above, Plaintiff maintains that the ALJ's RFC finding was not supported by substantial evidence. Specifically, Plaintiff maintains that in reaching an RFC determination, the ALJ relied upon a "stale" opinion rendered in 2016 by state consultative examiner Dr. John Schwab. Pl. Mem. of Law at 16. Plaintiff maintains that although the ALJ acknowledged that she underwent two surgeries on her cervical and lumbar spine subsequent to Dr. Schwab's opinion, and referenced the medical records from Plaintiff's orthopedic surgeons, the ALJ nevertheless "should have developed the record [prior to issuing his decision] with an updated opinion on Plaintiff's functioning." Pl. Mem. of Law at 20. The Plaintiff also asserts that the ALJ selectively chose to ignore the opinions of Plaintiff's orthopedists that Plaintiff is limited to lifting no more than 10 pounds.[3] Pl. Mem. of Law at 21. The Court disagrees.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, *SSR 96-8P*, 1996 WL 374184 at *1 (S.S.A. July 2, 1996). In assessing a claimant's physical abilities for his or her RFC, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including whether the claimant can "perform certain physical demands of work

---

[3] While Plaintiff argues the ALJ ignored her orthopedists' opinions regarding her lifting restrictions, Plaintiff *does not* argue that the ALJ violated the "treating physician rule."

11

activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching) . . . ." 20 C.F.R. § 404.1545(b) and 416.945(b). Thereafter, the ALJ may classify "a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work)." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). "The RFC assessment must be based on *all* of the relevant evidence in the case record." *SSR 96-8P* at *5. In reviewing the ALJ's RFC determination, the relevant inquiry for a reviewing court is simply "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Cichocki*, 729 F.3d at 177 (collecting cases from other circuits).

In the present case the Court finds that, notwithstanding the ALJ's decision not to order a second consultative examination after Plaintiff's 2017 and 2018 surgeries on her cervical and lumbar spine, there is substantial evidence in the record to support the RFC determination. That portion of the ALJ's decision discussing the RFC determination demonstrates that the record has been adequately developed, and that the ALJ gave "careful consideration" to all of the relevant evidence, including Plaintiff's treatment records dating back to 2015, and records from Plaintiff's orthopedists both before and after her surgeries. Tr. 16–19.

The ALJ thoroughly explained his assessment of the medical opinions in the record. To begin with, the ALJ noted that Plaintiff's primary care physician and

treating orthopedists "consistently assessed the claimant was 100 percent disab[led]," and that the orthopedists indicated a "post-surgical lifting restriction of 10 pounds." Tr. 19. The ALJ gave the lifting restrictions significant weight, but noted that other evidence in the record indicated that Plaintiff's activities of daily living post-surgery demonstrated she could lift more than 10 pounds. Tr. 19; Tr. 510. For instance, Plaintiff testified that she has been living independently since 2014, and that she sometimes gets help in caring for her two young children[4] from her mother and sister "when they're able to but, other than that, I have to do it myself." Tr. 34, 66.

The ALJ's assessment of consultative examiner Dr. Schwab's allegedly "stale" opinion from 2016 was also balanced. The ALJ noted that the only clinical deficits Dr. Schwab observed in Plaintiff "was some right shoulder range of motion restrictions." Tr. 19. Further, the ALJ gave Dr. Schwab's opinion significant weight because "the limitations assessed in his medical source statement are consistent with the results of his examination . . . ." Tr. 19. Nevertheless, the ALJ noted that Dr. Schwab was not able to assess Plaintiff's spine, and that the totality of the medical evidence in the record – including evidence from Plaintiff's orthopedists – showed "additional restrictions imposed by [Plaintiff's] spine impairments." Tr. 19.

At the conclusion of his RFC discussion, the ALJ summarized his findings and rationale:

> In sum, the claimant's allegations regarding her symptoms and limitations are partially supported by the medical evidence. As noted

---

[4] Plaintiff testified that her children were born 12/25/14, and 12/20/2016. Tr. 34.

above, the claimant underwent surgery on her lumbar spine and cervical spine within a period of approximately six months in September 2017 and February 2018, and subsequent treatment reports show some lingering weakness in the extremities, but she has retained the ability to ambulate effectively with a "slow steady gait pattern," and there is no evidence of atrophy. While the claimant has reported she receives assistance from family for almost all daily activities, this is not consistent with treatment reports, which show that the claimant was completely independent in her activities of daily living in November and December 2017, only a few months after her lumbar spine surgery, albeit with some reported difficulty. The claimant also had long periods since her alleged onset date when she was able to work substantial gainful activity, but has not cooperated with requests to produce additional evidence regarding her work.

Therefore, based on the claimant's work activity since the alleged onset date, the medical records regarding her surgeries and clinical findings related to her spine impairments, and the rest of the record, I find that, during periods when she was not engaging in substantial gainful activity or immediately recovering from surgery, she has been able to perform a range of light work . . . .

Tr. 19–20. Combined, the body of evidence referenced by the ALJ throughout his decision substantially supports his RFC determination. *Rutkowski v. Astrue*, 368 F. App'x 226, 230 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 8] is denied, the Commissioner's motion [ECF No. 11] is granted, and the Clerk of Court is directed to close this case.

DATED:   February 22, 2021
         Rochester, New York

>                    /s/ Charles J. Siragusa
>                    CHARLES J. SIRAGUSA
>                    United States District Judge